UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| G.L., a minor, by and through HOLLY LEFLER, as Mother and Next Friend, | ) ) ) ) | Civil. No.: 3:19-cv-00032-GFVT |
| Plaintiff, | ) ) | |
| V. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the United States' Motions in Limine [R. 19, R. 22.] On May 2, 2019, Plaintiff filed a complaint for damages against the United States under the Federal Tort Claims Act, alleging that Certified Nurse Midwife Kathleen Isaac, an employee of Women's Care of the Bluegrass, committed medical malpractice during the delivery of G.L., which left her with a permanent left-sided brachial plexus injury. [R. 1.] In response, the Government disputes that CNM Isaac acted negligently in delivering G.L. and asserts that G.L. is not entitled to damages. [R. 9.] The Court, having reviewed the record and for the reasons set forth herein, will **GRANT** the United States' motions in part and **DENY** the United States' motions in part.

I

On April 14, 2016, Holly Lefler gave birth to G.L. [R. 1 at 2.] CNM Kathleen Isaac, an employee of Women's Care of the Bluegrass, delivered G.L. at Frankfort Regional Medical Center in Frankfort, Kentucky. *Id.* During the delivery, Ms. Isaac was presented with a shoulder

dystocia complication. *Id.* Plaintiff alleges that, because Ms. Isaac mismanaged this complication, G.L. suffered a permanent brachial plexus injury at birth. *Id.* In response, the Government agrees that Ms. Isaac encountered a shoulder dystocia complication but denies any malpractice. [R. 9 at 2.] Both parties agree that Plaintiff has exhausted her administrative remedies in pursuit of this matter, which gives this Court jurisdiction over the claims presented at the administrative level. [R. 1 at 3; R. 9 at 2.] Ultimately, Plaintiff alleges that Ms. Isaac negligently delivered G.L., that her negligence caused permanent injury to G.L. which will require various treatments over the course of G.L.'s life, and that her negligence diminished G.L.'s ability to earn an income. [R. 1 at 4.] Further, Plaintiff alleges that Women's Care of the Bluegrass was negligent in hiring, training, supervising, and retaining Ms. Isaac as an employee. *Id.* at 5. The Government disputes both allegations. [R. 9 at 2-3.]

On April 20, 2021, the Government filed a Motion in Limine seeking to exclude any claims relating to allegedly negligent prenatal care received by Holly Lefler and any claim regarding alleged negligent hiring, retention, supervision, and training against Women's Care of the Bluegrass.[1] *Id.* at 2. In support, the Government argues that these claims were not first exhausted at the administrative level and are therefore procedurally barred from this suit. *See id.* In response, Plaintiff agrees that her claims pertaining to negligent hiring and supervision were not brought at the administrative level and may properly be excluded from this suit. [R. 23 at 1.] However, Plaintiff disagrees that her claim that Holly Lefler received negligent prenatal care was

---

[1] The Government indicates that it has filed a motion in limine as opposed to a motion to dismiss for failure to exhaust because Plaintiff did not indicate that he planned to present evidence of alleged negligent prenatal care until her expert filed their report. [R. 19 at 3.] Accordingly, the Government argues that it was not immediately clear that it needed to request dismissal of negligent hiring until this point in the litigation. However, it does stipulate that Plaintiff's negligent hiring, retention, and supervision claims could have been appropriately addressed by an earlier motion to dismiss. *See id.*

not properly exhausted at the administrative level. [R. 23 at 1.] In support of her assertion, Plaintiff points to a letter written by her expert witness to the controlling administrative agency in which the expert briefly opines that Holly Lefler's prenatal care was negligent. *Id.* at 2.

On May 5, 2021, the Government filed a second Motion in Limine seeking to exclude the testimony of Vocational Economist Sara Ford, alleging that her proffered opinion does not satisfy Federal Rule of Evidence 702. [R. 22 at 1.] In response, Plaintiff argues that Ms. Ford's opinion is based on sufficient facts or data, including a review of G.L.'s medical records, an interview with G.L.'s mother, and the textbook definition of disability as defined by the American Community Survey. [R. 24 at 2.]

## II

### A

The Federal Tort Claims Act functions as a limited waiver of sovereign immunity for state law torts committed by federal employees acting within the scope of their employment. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475-76 (1994). One of the limitations of the FTCA is that a plaintiff must file an administrative claim with the appropriate Federal agency before an action for money damages can be instituted against the United States. 28 U.S.C. § 2675(a). A tort claim will be forever barred if it is not presented in writing to the appropriate Federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). Failure to exhaust administrative remedies will deprive a federal court of jurisdiction over the claim. *Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003) (citing *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994)); *see also Fishburn v. Brown*, 125 F.3d 979, 982 (6th Cir. 1997), *abrogated on other grounds by Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).

A plaintiff may not include a claim in a district court complaint which was not also presented in the administrative claim. *Thompson v. United States*, 8 F. App'x 547, 548 (6th Cir. 2001). A cause of action from an administrative claim may be preserved for adjudication in a district court so long as the claimant provided enough specificity in the administrative claim to allow a legally trained reader to infer all potential grounds of suit. *See Goodman v. United States*, 298 F.3d 1048, 1055-56 (9th Cir. 2002); *Murrey v. United States*, 73 F.3d 1448, 1451 (7th Cir. 1996); *Milby v. United States*, 2010 WL 3239027, at *2 (W.D. Ky. Aug. 16, 2010); *Harvey v. United States*, 2010 WL 2010488, at *2 (W.D. Ky. May 20, 2010); *Adams v. United States*, 2008 WL 5428063, at *4 (N.D. Ohio Dec. 30, 2008).

An administrative claim is deemed to have been presented when a Federal agency receives from a claimant an executed Standard Form 95 accompanied by a claim for money damages in sum certain for injury alleged to have occurred by reason of the incident. 28 C.F.R. § 14.2(a). Amendments to the Form may be made at any time prior to the final agency action but must be made in writing. 28 C.F.R. § 14.2(c). Failure to comply with the procedural requirements of the FTCA will result in the dismissal of claims not listed on the Standard Form 95. *See Rucker v. U.S. Dep't of Lab.*, 798 F.2d 891, 893 (6th Cir. 1986); *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983). Moreover, even if a Plaintiff's Standard Form 95 is properly amended, the amendment cannot correct the expiration of a claim's two-year statute of limitations. *Withrow v. United States*, 2005 U.S. Dist. LEXIS 45434 at *17 (E.D. Ky. Sep. 28, 2005) ("[i]f relation back were permitted, the FTCA's statute of limitations would not have any meaning because a plaintiff could avoid the limitations period by merely amending the original claim to add additional claims, anytime after the limitations period has expired.").

In its first Motion in Limine, the Government seeks to exclude Plaintiff's claim that Holly Lefler received negligent prenatal care and Plaintiff's claims of negligent hiring, retention, supervision, and training. *Id.* at 2. Regarding the latter claims of negligent hiring, retention, and supervision, the Government argues that because Plaintiff did not exhaust them at the administrative level that these claims should be dismissed. *Id.* at 3. In response, Plaintiff stipulates that these claims were not presented at the administrative level and can be properly excluded. [R. 23 at 1.]

Next, the Government asserts that Plaintiff's claim of negligent prenatal care should be dismissed because it was not filed in her original Complaint and because Plaintiff did not amend her Standard Form 95 to add these claims, as required under the FTCA. *See* 28 C.F.R. § 14.2(c). Moreover, the Government argues that, even if Plaintiff's amendment is deemed proper, any claim of negligent prenatal care is barred by the FTCA's two-year statute of limitations. [R. 25 at 1-2.] In response, Plaintiff argues that a letter mailed to the Department of Health & Human Services on June 1, 2018, properly amended her Standard Form to include this claim. [R. 23 at 1; *see* R. 23-1 at 2.] Upon examination of Plaintiff's Standard Form 95 and June 2018 letter, however, the Court agrees with the Government that any claim of negligent prenatal care is procedurally barred. On Plaintiff's Standard Form 95, Holly Lefler is not listed as a plaintiff or injured party. [R. 19-1.] Moreover, the Form clearly identifies G.L. as a claimant and Holly Lefler as a witness. [R. 19-1 at 3.] Accordingly, because a "legally trained reader" could not infer from the Standard Form 95 that Holly Lefler suffered injury, Plaintiff's claim of negligent prenatal care is improper before this Court. *See Rucker*, 798 F.2d at 893; *Johnson*, 704 F.2d at 1442.

Moreover, although Plaintiff's letter indicates that Plaintiff's expert believes Holly Lefler received inadequate prenatal care, the Court finds this letter to not be a clear amendment to Plaintiff's Form. Additionally, because G.L. was born in April of 2016, any claims of negligent prenatal care were required to have been filed by April of 2018, at the latest, to fall within the FTCA's two-year statute of limitations. Because Plaintiff's Form was not filed until June of 2018 and because the doctrine of relation back cannot overcome the passing of the statute of limitations in FTCA cases, Plaintiff's claim of negligent prenatal care is also barred. *See Withrow v. United States*, 2005 U.S. Dist. LEXIS 45434 at *17 (E.D. Ky. Sep. 28, 2005); 28 C.F.R. § 14.2(c). Accordingly, the United States' first Motion in Limine **[R. 19]** is **GRANTED.**

**B**

Next, the Court turns to the Government's Motion in Limine to exclude expert witness Sara Ford from testifying on behalf of G.L. [R. 22.] Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has made clear that Rule 702 requires district courts to perform a "gatekeeping role" concerning the admissibility of all expert testimony under rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Newell Rubbermaid, Inc. v. The Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012).

The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the testimony must be reliable. *Id.*; *see also Daubert,* 509 U.S. at 590. In determining reliability, a trial court should assess whether the testimony is based on "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. A court must be sure not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other. *Id.* (quoting Fed. R. Evid. 702 advisory committee's note, 2000 amend). Rather, the requirement that an expert's testimony be reliable means it must be "supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590). Ultimately, in limiting expert testimony, a trial court must be careful not "to impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The United States seeks to exclude the expert testimony of Vocational Economist Sara Ford on the grounds that her opinion on G.L.'s disability status is not based on sufficient facts or data. [R. 22.] In support, the Government argues that Ms. Ford's expert report is inconsistent with the diagnosis of G.L.'s treating physician and that Ms. Ford improperly relied on an

7

interview with G.L.'s mother to form her conclusion that G.L. is disabled. *Id.* at 2. Finally, the Government argues that Ms. Ford failed to consider all relevant medical documents in this matter, which further renders her opinion unreliable. *Id.* In response, Plaintiff asserts that Ms. Ford's opinion is based on sufficient facts and data to be deemed reliable. [R. 24 at 2.] Plaintiff first notes that the only question Ms. Ford seeks to answer is "whether [G.L.] has sustained a destruction to her capacity to labor and earn." *Id.* Plaintiff asserts that, although Dr. Schwentker and G. L.'s mother have high hopes for further improvement, these hopes do not undermine her report because she is relying on current data. *See id.* Next, Plaintiff argues that the information reviewed by Ms. Ford and the methodology she employed to reach her conclusion in support of her argument render her opinion reliable. *See id.* at 3.

      The Court agrees with Plaintiff that Ms. Ford's testimony is admissible. First, though the Government believes Ms. Ford's opinion to be inconsistent with the medical opinion of Dr. Schwentker, the Court disagrees. In her deposition, Dr. Schwentker was asked about "a wobbly foot or something like that." [R. 22-3 at 25]. But the problem reported by Ms. Ford in her report was that G.L. was "wobbly on one foot" [R. 18-2 at 2], which appears to refer to G.L.'s balance, not an actual physical impairment as Dr. Schwentker analyzed. Second, while the Government asserts that Ms. Ford only reviewed medical records from an appointment two months after G.L.'s birth and failed to review more recent records, Ms. Ford's report mentions details from other medical records in passing and Ms. Ford states that she reviewed at least three separate medical records in the preparation of her report. *See id.* Consequently, the Court gives this argument little weight. Accordingly, the Government's second Motion in Limine **[R. 22]** is **DENIED**.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' Motion in Limine to exclude claims not presented at the administrative level [**R. 19**] is **GRANTED**;

2. The United States' Motion in Limine to exclude the testimony of Sara Ford [**R. 22**] is **DENIED**.

This the 20th day of July, 2021.

Gregory F. Van Tatenhove
United States District Judge